STATE OF NORTH CAROLINA v. RONALD EARL ABBOTT

No. 335A86

(Filed 28 July 1987)

1. **Criminal Law § 15.1— allegedly inflammatory newspaper articles—change of venue denied—no error**

   In a prosecution for first degree rape, first degree sexual offense and first degree kidnapping, the trial court did not err by denying defendant's motion for a change of venue or a special venire based on allegedly inflammatory newspaper articles where six of the twelve jurors stated that they had not heard of the case before they came to court; the other six said they could decide the case on the evidence presented and not on what they had heard outside the courtroom; Gaston County is not a small rural county; and there was no evidence of the impact of the newspaper articles on the population other than the evidence of the publication. In light of the holding that defendant had not made a sufficient showing to require a change of venue, there was no prejudice from a statement by the court that the locale in which the crime is alleged to have been committed is material. N.C.G.S. § 15A-957.

2. **Constitutional Law § 60; Jury § 7.1— peremptory challenges—exclusion of blacks—no prima facie showing of racial motivation**

   Defendant in a prosecution for first degree rape, first degree sexual offense, and first degree kidnapping, did not make a *prima facie* case of racially motivated peremptory challenges where five blacks were tendered as prospective jurors to the State and the State exercised peremptory challenges to three of them, accepting 40% of the blacks tendered. Sixth Amendment to the Constitution of the United States; Art. I, § 24 of the North Carolina Constitution.

3. **Constitutional Law § 30— incriminating statement—district attorney's open file policy—statement not in file—no discovery motion—admissible**

   There was no error in a prosecution for rape, first degree sexual offense and kidnapping in the admission of testimony that defendant had said shortly before he was arrested that he had stayed in the woods for a week because police were looking for him on a rape charge where the State maintained an open file policy but the testimony had not been reduced to writing and was not in the file, and defendant did not make a motion to compel discovery. N.C.G.S. § 15A-903(a)(2).

4. **Criminal Law § 88.5— recross-examination denied—no abuse of discretion**

   In a prosecution for rape, first degree sexual offense, and kidnapping, there was no abuse of discretion in not allowing further cross-examination of a witness to whom defendant had made an inculpatory statement where defendant had argued that he had had no opportunity to interview the witness before the first cross-examination.

5. **Criminal Law § 87.1— allegedly hostile witness—leading question denied—no prejudice**

There was no prejudice in a prosecution for rape, first degree sexual offense, and kidnapping in the court's refusal to allow defendant to ask a leading question of a witness whom defendant contended was a hostile witness where the testimony the witness would have given would not have been helpful to defendant. N.C.G.S. § 15A-1443.

6. **Criminal Law § 102.6— rape, first degree sexual offense, kidnapping—prosecutor's jury argument—no error**

There was no error in a prosecution for rape, first degree sexual offense, and kidnapping in the prosecutor's argument to the jury concerning a conversation the prosecuting witness had with defendant prior to the rape where the prosecuting witness had testified that prior to the rape she had had such a conversation.

7. **Criminal Law § 102.6— rape, first degree sexual offense, kidnapping—prosecutor's argument concerning defendant's unemployment—no error**

There was no error in a prosecution for rape, first degree sexual offense, and kidnapping in a prosecutor's argument which referred to defendant's unemployment because the prosecuting attorney was attempting to impress on the jury that, although they might not think or act in a certain way, there are people who think and act as he contended defendant had done in this case.

8. **Constitutional Law § 34— first degree rape, first degree sexual offense, first degree kidnapping—sentenced on all three charges—remanded for resentencing**

A defendant who had been convicted of first degree rape, first degree sexual offense, and first degree kidnapping was erroneously sentenced on all three charges under the particular facts of the case and the case was remanded for resentencing.

APPEAL by defendant from *Sitton, Judge.* Judgments entered 30 January 1986 in Superior Court, GASTON County. Heard in the Supreme Court 12 February 1987.

The defendant was tried for first degree rape, first degree sexual offense and first degree kidnapping. The State presented evidence tending to show the following: On 9 August 1985, the victim arose at approximately 6:10 a.m. and went for a walk in the vicinity of Hunter Huss School in Gastonia, North Carolina. As she approached the school a man grabbed her and pointed a pistol at her face. She struggled initially but soon ceased for fear that he would shoot her. Her assailant forced her at gunpoint to walk approximately 100 yards across a parking lot in front of the school and into a picnic area. Behind the school and out of sight of the road the victim and the assailant sat on a wall and talked. She

attempted to dissuade him from harming her. The defendant then forced the victim to touch his genitals, to perform fellatio on him and to submit to three acts of nonconsensual intercourse. She testified that she obeyed the defendant out of fear for her safety.

The victim and the defendant discussed whether he would injure her further. She assured him that she would not call the police. He asked her for her address, which she gave him. He then left and the victim returned to her home, where she reported the events to her husband and to police. When shown a photographic lineup later that day by police she identified a photograph of the defendant as that of her assailant. She also identified the defendant in court as her assailant.

The defendant presented evidence of an alibi. He was convicted as charged. He was sentenced to life in prison on both the first degree rape and first degree sex offense charges and forty years for kidnapping. The sentences were ordered to run consecutively. He appealed.

*Lacy H. Thornburg, Attorney General, by Francis W. Crawley, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1]  In his first assignment of error the defendant contends the court should have granted his motion for a change of venue or a special venire because of pretrial publicity which prevented him from having a fair trial in Gaston County. N.C.G.S. § 15A-957 provides in part:

> If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:
>
> (1) Transfer the proceeding to another county in the judicial district or to another county in an adjoining judicial district, or
>
> (2) Order a special venire under the terms of G.S. 15A-958.

This Court has interpreted this section in many cases. *See State v. Moore*, 319 N.C. 645, 356 S.E. 2d 336 (1987); *State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591 (1984); *State v. Watson*, 310 N.C. 384, 312 S.E. 2d 448 (1984); *State v. Corbett*, 309 N.C. 382, 307 S.E. 2d 139 (1983); *State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983); *State v. Richardson*, 308 N.C. 470, 302 S.E. 2d 799 (1983); *State v. Dobbins*, 306 N.C. 342, 293 S.E. 2d 162 (1982); and *State v. Harrill*, 289 N.C. 186, 221 S.E. 2d 325, *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1211 (1976).

The above cases establish that the purpose of N.C.G.S. § 15A-957 is to insure that jurors decide cases based on evidence introduced at trial and not on something they have heard outside the courtroom. The burden is on the moving party to show that "due to pretrial publicity, there is a reasonable likelihood that defendant will not receive a fair trial." *Jerrett*, 309 N.C. 239, 254, 307 S.E. 2d 339, 347. If he does so the court should remove the case to another county not so permeated with such publicity or it should order a special venire from such a county. If press accounts are factual and consist of matters which may be introduced at trial, a motion for change of venue should not ordinarily be granted. In most cases a showing of identifiable prejudice to the accused must be made, and relevant to this inquiry is testimony by potential jurors that they can decide the case based on the evidence presented and not on pretrial publicity. If a moving party produces evidence, as was produced in *Jerrett*, however, in the form of uncontradicted testimony from several witnesses that a county is so permeated with a prejudice against him that he cannot receive a fair trial, we have held that the trial should have been moved without a showing of identifiable prejudice among the jurors selected. The size of a county's population is relevant to this issue. Some of our cases have said that it is within the discretion of the trial court as to whether to remove the case or to order a special venire. If the moving party can make a sufficient showing of prejudice, however, the court must grant the motion as a matter of law.

In support of its motion the defendant introduced articles from the *Gastonia Gazette*, a newspaper with a circulation of approximately 40,000 copies a day in a county with a population of approximately 140,000 people. The defendant had been charged with rape and robbery in 1984 and had been extradited from

State v. Abbott

Ohio to face these charges which were dismissed because the prosecuting witness could not be found. He had received a sentence of 25 years imprisonment on unrelated charges. The crime for which the defendant was charged occurred on 9 August 1985. His trial began 27 January 1986. The defendant introduced nine articles from the *Gastonia Gazette*. Four of them were published in August 1985, one in September, three in November at which time he was indicted by the grand jury, and one on 26 January 1986. These articles mentioned the unrelated rape and robbery with which the defendant had been charged, the prison sentence which he had received for the unrelated charge and said the defendant had been convicted of rape in Ohio. One article quoted a policeman as saying, "We want this guy off the streets real bad. I would say he is extremely dangerous. . . ." Other articles said "because of his prior rape conviction and the local charges in September, police believe he is capable of raping again," and "Police . . . fear the suspect . . . is capable of extreme violence to protect his identity." The court denied the motion but ordered an individual voir dire for each prospective juror. Six of the jurors who determined the case stated they had not read of the case or discussed it prior to the commencement of the trial. The other six stated that they had not formed an opinion as to the defendant's guilt or innocence and would determine the defendant's guilt or innocence from the evidence presented at trial.

We hold the court did not commit error in denying the defendant's motion for a change of venue or a special venire. Six of the twelve jurors stated they had not heard of the case before they came to court. The other six said they could decide the case based on the evidence presented and not on what they had heard of the case outside the courtroom. The defendant has not made a sufficient showing of identifiable prejudice to him to be entitled to the allowance of the motion. Gaston County is not a small rural county as was the case in *Jerrett*. There was no evidence of the impact of the newspaper articles on the population other than the evidence of their publication. This evidence was offset by the testimony of the jurors who were seated that the articles would not influence their verdict.

The defendant argues that the court in making its ruling gave improper weight to the interests of the citizens of Gaston

County in having a person tried in Gaston County who is charged with committing a crime in the county. In making its ruling the court said it took into account "that the locale in which the crime is alleged to have been committed is material. . . ." As the defendant points out, this is not the test in determining whether there should be a change in venue. *Jerrett*, 309 N.C. 239, 307 S.E. 2d 339. In light of our holding that the defendant has not made a sufficient showing to require a change of venue we do not believe the defendant was prejudiced if the court relied on this statement in making its ruling. For the same reason we need not determine whether the newspaper articles were inflammatory and contained matters which could not have been admitted into evidence. The defendant was able to get a jury which was not prejudiced by the articles.

[2] In his second assignment of error the defendant contends an unrebutted prima facie showing of racial discrimination in the selection of the jury was made which entitles him to a new trial. He bases this argument on the fact that of five black jurors tendered the State exercised peremptory challenges to three of them. The defendant successfully challenged for cause one of the black jurors who had been accepted by the State.

In *Batson v. Kentucky*, 476 U.S. ---, 90 L.Ed. 2d 69 (1986), the United States Supreme Court overruled *Swain v. Alabama*, 380 U.S. 202, 13 L.Ed. 2d 759 (1965), and held a defendant can make a prima facie case of purposeful discrimination in the selection of the petit jury on evidence concerning the prosecutor's exercise of peremptory challenges. The Court said:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . ., and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate". . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

In *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986), this Court held that the rule of *Batson* should not be applied retroactively. In *Griffith v. Kentucky*, 479 U.S. ---, 93 L.Ed. 2d 649 (1987), the United States Supreme Court held that *Batson* is retroactively applicable to cases pending on appeal or not yet final. The United States Supreme Court has overruled *Jackson* and we must apply the *Batson* rule to this case.

*Batson* is grounded on the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The defendant argues that in addition to his equal protection claim he has shown a violation of the Sixth Amendment to the Constitution of the United States and Article I, Section 24 of the North Carolina Constitution which guarantee him a trial by an impartial jury.

In *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986), the defendant contended that the pattern of peremptory challenges of blacks showed a violation of his right to an impartial jury as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 24 of the North Carolina Constitution. He argued that these constitutional provisions required that a jury before which he was tried must be comprised of a fair cross section of the community. This Court did not reach the question of whether this was constitutionally required because the pattern of peremptory challenges to blacks did not show the challenges were racially motivated. The defendant argues that the pattern of peremptory challenges in this case does show racial motivation and asks us to determine the question we declined to determine in *Belton*.

In *Belton* twelve black jurors were tendered to the State. It peremptorily challenged six of them. Three black alternate jurors were tendered to the State. It peremptorily challenged two of them. The jury before which the defendant was tried in *Belton* consisted of eight whites and four blacks. There were two alternates, one white and one black. In this case we hold that, as in *Belton*, the defendant has not made a prima facie case of racially motivated peremptory challenges. Five blacks were tendered as prospective jurors to the State. It exercised peremptory challenges to three of them. The State was willing to accept 40% of the blacks tendered. The State in *Belton* accepted 50% of the

blacks tendered. There was not a showing from the State's action in this case that it was determined not to let a black sit as a juror on account of the race of the defendant.

[3] In his third assignment of error the defendant argues that it was error for the State to be allowed to use the testimony of Marvin Wallace. Mr. Wallace testified that he saw the defendant shortly before the defendant was arrested and the defendant told him at that time "that he had stayed in the woods for a week or something like that" because the "police were looking for him for a rape charge." The defendant argues it was a violation of N.C.G.S. § 15A-903(a)(2) for the State not to have provided him with this testimony before trial and because of this the testimony should have been excluded. N.C.G.S. § 15A-903(a)(2) provides that upon motion of the defendant prior to trial the State must divulge to him the substance of any oral statement relevant to the case made by the defendant and within the possession of the State, the existence of which is known to the prosecutor.

In this case the defendant did not make a motion for discovery but relied on what he considered to be an open file policy of the district attorney. The defendant's attorney examined the file of the district attorney but did not find the testimony of Marvin Wallace because it had not been reduced to writing. A defendant is not entitled to discovery of materials in the possession of the State unless he makes a motion to compel discovery. *State v. Keaton*, 61 N.C. App. 279, 300 S.E. 2d 471 (1983) and *State v. Hoskins*, 36 N.C. App. 92, 242 S.E. 2d 900, *disc. rev. denied*, 295 N.C. 469, 246 S.E. 2d 11 (1978). The defendant argues that for the prosecutor to establish an open file policy wherein defense counsel are not to file discovery motions and then to use that policy to conceal discoverable evidence perverts the concept of an open file policy. He contends an "open file policy should be seen as implicitly founded on a standing motion to disclose all discoverable material." We do not believe we should hold that if a district attorney adopts an open file policy that gives all defendants a standing motion for discovery. We cannot say in this case that the State has perverted the open file policy. The defendant did not move for discovery and he cannot now complain that he did not know in advance of trial of the statement of Marvin Wallace.

[4] The defendant argues two questions under his fourth assignment of error. He first says it was error for the court not to give him an opportunity to cross-examine Marvin Wallace. After Wallace testified, the defendant conducted a cross-examination. After this cross-examination the defendant requested the court to have Mr. Wallace remain in the courtroom, which was done. When the State rested its case the defendant requested that Mr. Wallace be recalled for further cross-examination. The court declined this request. The defendant argues that he did not have an opportunity to interview this witness before cross-examining him the first time and he was prejudiced by not being allowed to cross-examine after interviewing the witness. After a party has completed the cross-examination of a witness, it is within the discretion of the court whether he shall be allowed to cross-examine for a second time. *See* 1 Brandis on North Carolina Evidence § 24 (1982). We hold there was not an abuse of discretion in this case by not allowing further cross-examination.

[5] When the defendant put on his evidence he called Marvin Wallace as a witness and the court sustained an objection to a leading question. This is the second question the defendant argues under this assignment of error. He contends it was error to refuse him the right to ask a leading question because Wallace was a hostile witness. The defendant contends that if Wallace had been allowed to answer the question he would have testified that the defendant denied at the time he talked to him that he had raped the prosecuting witness. The defendant was allowed to put in the record what the answer of the defendant would have been. Wallace would have testified as follows:

> All he say is the police were trying to pin a rape case on him. That's all he told me. Then he say he was sleeping in the woods and then he say he was thirsty and needed a soda. And we walk out of the store . . . and, when we come out, we were surrounded by police. That's all I know about that.

This testimony would not have been helpful to the defendant. He has not demonstrated prejudice by its exclusion. N.C.G.S. § 15A-1443.

[6] In his fifth assignment of error the defendant argues the prosecuting attorney made improper jury arguments. The defend-

ant contends the following argument of the prosecuting attorney was improper:

> I ask you to recall what Mr. Abbott asked for first. "What have you got on you? What have you got I can have?" She said, "Nothing, but I have got a card back home, or some money back home." "No, that's not good enough. Can't go back home where your husband is." His motive in taking her off the street, I contend to you, at that time was to rob her. He just wanted money. He was not employed.

A prosecuting attorney may argue facts in evidence as well as reasonable inferences that may be drawn therefrom. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (1984). The prosecuting witness testified that prior to the rape she had such a conversation as argued by the district attorney. It was not error for him to argue as he did.

[7] The second part of the prosecuting attorney's argument to which the defendant assigns error is as follows:

> [G]iven what times were involved and you may think, well, gosh, how can somebody do these sick acts for twenty minutes, and be able to just calmly drive home and get there at the normal time and sit in the living room; you just want to shut that out from your mind and not believe it, well, that may be because many of your experiences—at least seven of you selected on this jury have worked at one job at least eighteen years, and many longer. Others have different forms of collective wisdom among you. An individual such as Mr. Abbott is foreign to your families, foreign to your friends and foreign to almost every one of us—

There was evidence that the defendant was unemployed and he argues that the prosecuting attorney called this to the jury's attention by pointing out to them that they were employed. He contends the only purpose of this argument was to dehumanize the defendant. Relying on *Jerrett*, 309 N.C. 239, 307 S.E. 2d 339, in which it was held error for the prosecuting attorney to call the defendant a "conman" and a "disciple of Satan" and on *State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971), in which we held it was error for the district attorney to say the defendant was "lower than the bone belly of a cur dog" the defendant says this is er-

ror. He argues that the purpose of what he calls this vilification of him as foreign was to call on the jury to align themselves against the defendant.

We hold this argument was not improper. As we read the argument the prosecuting attorney was attempting to impress on the jury that although they might not think or act in a certain way, there are people who could think and act as he contended the defendant had done in this case. This is a proper argument.

[8] In his final assignment of error the defendant argues and the State agrees that under the particular facts of this case he cannot be sentenced on all three charges. He was convicted of first degree kidnapping based on a sexual assault, first degree rape and first degree sexual assault. Judgment must be arrested on one of the charges. *See Belton*, 318 N.C. 141, 347 S.E. 2d 755 and *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986). We remand the case to the Superior Court of Gaston County. That court may arrest judgment on the charge of first degree kidnapping and enter a judgment of guilty of second degree kidnapping or it may let the judgment of first degree kidnapping stand and arrest judgment on either of the other two charges. The defendant will then be resentenced.

No error in the trial; remanded for resentencing.