STATE OF NORTH CAROLINA v. JOHN LAVELLE MADRIC

No. 108A89

(Filed 7 February 1991)

## 1. Criminal Law § 75 (NCI4th)— motion for change of venue— opinion testimony excluded—no prejudice

There was no prejudice in a prosecution for murder, kidnapping, and armed robbery in the trial court's excluding from defendant's change of venue hearing opinion testimony on whether defendant could receive a fair trial in Rockingham County. In cases in which a jury has been selected and the trial court has thereafter considered the defendant's renewed motion for a change of venue, any opinion testimony given during a pretrial motion hearing will be of little value because the trial court will have before it the questions put to the actual jurors and their answers. Any error in excluding opinion testimony during an earlier pretrial motion hearing will be held harmless absent a clear showing to the contrary by the defendant.

**Am Jur 2d, Criminal Law §§ 378, 382, 385-387.**

## 2. Criminal Law § 78 (NCI4th)— motion for change of venue— denied—no abuse of discretion

The trial court did not abuse its discretion in a prosecution for murder, kidnapping, and armed robbery by denying defendant's motion for a change of venue where ten articles were introduced concerning the crimes for which defendant was to be tried; those articles were primarily factual; the trial court inquired at the outset whether any prospective jurors had read or heard about defendant's case before coming to court; the trial court inquired of those who answered in the affirmative whether they had formed opinions which would interfere with their ability to give defendant a fair and impartial trial; those who stated that they had formed opinions or that they could not give the defendant a fair and impartial trial were excused by the court; the remaining prospective jurors were questioned through the standard selection procedure; ten of the first twelve jurors passed by the State knew nothing about the case; defendant peremptorily excused six of the first twelve jurors; five of the twelve who actually

served had heard or read about the case; and all of the jurors who actually served stated unequivocally that they had formed no opinions about the case and would base their opinions solely on the evidence presented at trial.

**Am Jur 2d, Criminal Law §§ 378, 385.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

3. **Criminal Law § 75 (NCI3d); Searches and Seizures § 14 (NCI4th) — evidence seized and statement made — admissible**

The trial court did not err in a prosecution for murder, kidnapping, and armed robbery by denying defendant's motions to suppress the statement and evidence seized from his mobile home where the court made proper findings, there was competent evidence supporting the findings, and the findings supported the conclusion that defendant's consent to the search was voluntarily given and that he voluntarily gave his statement.

**Am Jur 2d, Searches and Seizures § 46.**

4. **Constitutional Law § 202 (NCI4th) — kidnapping and murder — double jeopardy — not raised at trial**

Defendant waived the issue of double jeopardy in the entering of judgments against him for both first degree murder and kidnapping by not raising any double jeopardy issue at trial.

**Am Jur 2d, Abduction and Kidnapping § 9; Criminal Law § 461.**

APPEAL of right by the defendant, pursuant to N.C.G.S. § 7A-27(a), from judgment imposing a sentence of life imprisonment for first degree murder, entered by *Beaty, J.*, on 29 September 1988 in the Superior Court, ROCKINGHAM County. On 14 March 1989, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeal of additional judgments imposing sentences of less than life imprisonment. Heard in the Supreme Court on 8 October 1990.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia Devine, Assistant Appellate Defender, for defendant-appellant.*

**STATE v. MADRIC**

[328 N.C. 223 (1991)]

MITCHELL, Justice.

The defendant was indicted on 22 February 1988 for first degree murder, first degree kidnapping, and robbery with a dangerous weapon. The jury returned verdicts finding the defendant guilty of all offenses as charged. After a sentencing proceeding under N.C.G.S. § 15A-2000, the jury recommended a life sentence for the first degree murder conviction. The trial court sentenced the defendant to life imprisonment for the murder and to consecutive sentences of 20 and 40 years imprisonment, respectively, for the kidnapping and robbery convictions. The defendant appealed the judgment imposing a sentence of life imprisonment to this Court as a matter of right. On 14 March 1989, this Court allowed his motion to bypass the Court of Appeals on his appeals from the kidnapping and robbery convictions.

On appeal, the defendant brings forward three assignments of error. First, he contends the trial court abused its discretion by denying his motion for change of venue. Second, he argues that the trial court erred in denying his motions to suppress evidence seized from his mobile home and a statement he gave to law enforcement officers. Finally, he maintains that the trial court erred by entering judgments against him on both the first degree murder and the kidnapping convictions. We conclude that the defendant's assignments of error are without merit.

The State offered evidence tending to show that at 8:30 p.m. on 4 February 1988, Sadie Booker, a pregnant mother of two, left home to run errands at the local shopping mall. Early the next morning, a deputy sheriff found Booker's car straddling a roadside ditch. The car was covered with frost and the letters "KKK" were drawn on the windshield, the back windows, the driver's side windows and the back seat. There were bloodstains on the back seat, and a trail of blood led from the car into the defendant's driveway on the other side of the road. The deputy sheriff and two detectives followed the trail of blood and found Booker's naked body in the woods beside the driveway. The officers noted that the body bore stab wounds around the neck and chest. The trail of blood led to the defendant's door, and there were bloodstains on the doorstep, doorknob and screen door.

The officers knocked on the door, and when the defendant opened the door, the officers observed fresh scratch marks on the left side of his face. With the defendant's consent, the officers

STATE v. MADRIC

[328 N.C. 223 (1991)]

searched his mobile home. In the defendant's wood-burning stove, they found small pieces of blue cloth, a fingernail file, lipstick containers, perfume sample bottles and metal remnants of a change purse and pocketbook. The ashes also contained metal snaps of a type used on brassieres and ladies' clothing.

The defendant testified that he was looking for a ride home from McDonald's around 9:30 p.m. on 4 February. Three men gave him a ride, during which he fought with one of them and his face was scratched. After the fight, a police officer gave him a ride to a bridge near his home. While walking home from the bridge, he saw a car in the ditch. He examined the car, saw a purse on the floorboard, picked it up and took it to his home. Later, he returned and took the battery from the car. The battery was too small to power his car, so he tossed it down a hill. He returned to his home, threw contents of the purse into his fireplace and went to bed. He denied killing Sadie Booker.

Other pertinent facts are hereinafter set forth.

[1] The defendant first assigns as error the trial court's denials of his initial and renewed motions for change of venue. Prior to trial, the defendant filed a motion under N.C.G.S. § 15A-957 seeking a change of venue on the ground that existing prejudice against him in Rockingham County was so great that he could not receive a fair and impartial trial there. The trial court denied the defendant's motion at the close of a pretrial hearing and denied the motion again when the defendant renewed it after the jury had been selected, after three of the State's witnesses had testified, and at the close of the State's case. On appeal, the defendant argues that the trial court's rulings on his motion deprived him of his constitutional right to a fair trial.

The burden of proof in a hearing on a motion for a change of venue due to existing prejudice in the county in which a prosecution is pending is upon the defendant. *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987); *State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984). In order to prevail, the defendant must show that there is a reasonable likelihood that due to such prejudice he will not receive a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600 (1966); *State v. Hunt*, 325 N.C. 187, 381 S.E.2d 453 (1989). The determination of whether the defendant has carried this burden rests within the sound discretion of the trial court. *Id.* Absent a showing of abuse of discretion, its ruling

will not be overturned on appeal. *Id.; State v. Gardner*, 311 N.C. at 497, 319 S.E.2d at 598.

During the pretrial hearing on his motion for change of venue, the defendant put on evidence concerning the demographics of Rockingham County, local newspaper articles concerning the investigation of the crime for which the defendant was indicted in this case, and newspaper circulation figures. The defendant also sought to introduce testimony of one homemaker and several attorneys practicing in Rockingham County concerning their opinions as to whether the defendant could receive a fair trial there. Although the trial court permitted testimony by these witnesses concerning any conversations or comments they had heard about the defendant's case, the witnesses' statements of their opinions on the ultimate issue to be decided by the trial court — whether the defendant could receive a fair trial in Rockingham County — were not accepted in evidence and were allowed for record purposes only.

The defendant argues, *inter alia*, under this assignment of error that the trial court erred in excluding opinion testimony concerning whether he could receive a fair trial in Rockingham County. Assuming *arguendo* that such opinion testimony was admissible under N.C.G.S. § 8C-1, Rule 701 or Rule 704 as evidence helpful to the trial court as the fact finder on the ultimate issue, we conclude that any error in excluding it was harmless. In this regard, we note that the issue of admissibility of such opinion testimony must be decided as a question of statutory construction controlled by the North Carolina Rules of Evidence, N.C.G.S. § 8C-1 (1988). Therefore, the burden is upon the defendant to show that he was prejudiced by any error in the trial court's exclusion of such evidence. N.C.G.S. § 15A-1443(a) (1988).

The issue before the trial court here was whether it was "reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *State v. Jerrett*, 309 N.C. 239, 254-55, 307 S.E.2d 339, 347 (1983). Only in the most extraordinary cases can an appellate court determine *solely* upon evidence adduced prior to the actual commencement of jury selection that a trial court has abused its discretion by denying a motion for change of venue due to existing prejudice against the defendant. *E.g., Rideau v. Louisiana*, 373 U.S. 723,

10 L. Ed. 2d 663 (1963). Although opinion testimony of members of the community in which the defendant is to be tried as to whether the defendant can receive a fair trial may, in proper circumstances, be relevant and admissible, such evidence is not determinative on the question. In cases such as this in which a jury has been selected and the trial court has thereafter considered the defendant's renewed motion for change of venue, any opinion testimony given during a pretrial motion hearing as to whether the defendant can receive a fair trial will be of little value. In such cases, the trial court will have before it questions put to the actual jurors in the case and their answers — better and more reliable evidence on the question. In those cases, at least, any error by the trial court in excluding such opinion testimony during an earlier pretrial motion hearing will be held harmless absent a clear showing to the contrary by the defendant. We conclude that the defendant has failed to make such a showing and, therefore, we hold that any error by the trial court in excluding the opinion testimony proffered during the pretrial hearing on the defendant's motion was harmless.

[2] We turn next to the greater question raised by this assignment of error — whether the trial court abused its discretion by denying the defendant's motion for change of venue. The best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors' responses to questions during the jury selection process. *State v. Richardson*, 308 N.C. 470, 480, 302 S.E.2d 799, 805 (1983). "If an impartial jury actually cannot be selected, that fact should become evident at the *voir dire*. The defendant will then be entitled to any actions necessary to assure that he receives a fair trial." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 53 L. Ed. 2d 250, *reh'g denied*, 433 U.S. 916, 53 L. Ed. 2d 1103 (1977).

Where, as here, a jury has been selected to try the defendant and the defendant has been tried, the defendant must prove the existence of an opinion in the mind of *a juror who heard his case* that will raise a presumption of partiality. *Murphy v. Florida*, 421 U.S. 794, 800, 44 L. Ed. 2d 589, 595 (1975). The Supreme Court of the United States has noted in this regard that:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of

swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 722-23, 6 L. Ed. 2d 751, 756 (1961). Additionally, as we have previously pointed out:

In *State v. Richardson*, 308 N.C. 470, 302 S.E.2d 799, this Court stated that "the most persuasive evidence that the pretrial publicity was not prejudicial or inflammatory" was the potential jurors' responses to questions asked during the *voir dire* hearing conducted to select the jury. 308 N.C. at 480, 302 S.E.2d at 805. . . . Moreover, we stated in *Richardson* that the most important evidence that the pretrial publicity about the case was not prejudicial was that each juror selected to hear the case "unequivocally answered in the affirmative when asked if they could set aside what they had previously heard about defendant's case and determine defendant's guilt or innocence based solely on the evidence introduced at trial." *Id.*

*State v. Hunt*, 325 N.C. 187, 199, 381 S.E.2d 453, 460 (1989).

In the case *sub judice*, ten articles concerning the crimes for which the defendant was to be tried were introduced as exhibits. However, as the trial court concluded, they were primarily factual in nature. "This Court has consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue." *State v. Gardner*, 311 N.C. at 498, 319 S.E.2d at 598.

The trial court inquired at the outset of the jury selection process whether any prospective jurors had read or heard about the defendant's case before coming to court. As to those who answered in the affirmative, the trial court inquired further whether they had, as a result, formed opinions that would interfere with

their ability to give the defendant a fair and impartial trial. Those who stated they had formed opinions or who stated they could not give the defendant a fair and impartial trial were summarily excused for cause by the trial court. The remaining prospective jurors were questioned thereafter through the standard selection procedure.

Ten of the first twelve jurors the State passed to the defendant knew nothing about the case. The defendant excused peremptorily six of the first twelve jurors. Of the twelve who actually served as jurors during the defendant's trial, five had heard or read about the case; however, all of them stated unequivocally that they had formed no opinions about the case and would base their decisions solely on the evidence presented at trial. We cannot say, in light of such evidence, the trial court abused its discretion, either by concluding that the defendant had failed to rebut the presumption of juror impartiality, or by denying the defendant's motion for a change of venue. *See generally Murphy v. Florida*, 421 U.S. 794, 44 L. Ed. 2d 589 (1975); *State v. Hunt*, 325 N.C. 187, 381 S.E.2d 453 (1989); *State v. Richardson*, 308 N.C. 470, 302 S.E.2d 799 (1983). This assignment of error is without merit.

[3] The defendant next assigns as error the trial court's denial of his motion to suppress the evidence seized from his mobile home and the statement he gave on 5 February 1988. He contends that the State and the defense presented conflicting evidence at the *voir dire* hearing on his motions to suppress the evidence seized and his statement. Consequently, he argues, the trial court erred by failing to make specific findings of fact and conclusions of law when denying his motions to suppress. However, after the defendant's brief asserting this purported error was filed, the trial court's findings of fact and conclusions of law were made part of the record on a motion to amend granted by this Court on 7 August 1990.

The trial court made proper findings and concluded that the defendant's consent to the search was voluntarily given. The trial court also found that the defendant was advised of and waived his *Miranda* rights before he voluntarily gave his statement. These findings of fact are supported by testimony showing that at least two officers were invited inside the mobile home when they knocked on the door. Before the search began, the defendant signed a consent to search form which had been read and explained to him. In addition, there was testimony that the defendant was advised

of his *Miranda* rights and indicated that he understood them. Afterwards, he waived his rights and gave a statement to the officers. Since there is competent evidence supporting the trial court's findings of fact, the findings are conclusive. *State v. Barfield*, 298 N.C. 306, 339, 259 S.E.2d 510, 535 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1980). Those findings in turn support the trial court's conclusions. As a result, the trial court did not err in denying the defendant's motion to suppress. *Id.* This assignment of error is without merit.

[4] The defendant next attempts to argue that the trial court deprived him of constitutional rights by entering judgments against him on both the first-degree murder and the kidnapping convictions. The defendant asserts that the trial court thereby subjected him to double jeopardy for the single act of causing injuries to Sadie Booker resulting in her death. The defendant candidly concedes, however, that he did not raise any double jeopardy issue at trial. Therefore, this issue has been waived. *State v. Mitchell*, 317 N.C. 661, 346 S.E.2d 458 (1986); *State v. McKenzie*, 292 N.C. 170, 232 S.E.2d 424 (1977).

The defendant received a fair trial free from prejudicial error, and we find

No error.