STATE OF NORTH CAROLINA v. JEFFREY ALLEN LANE

No. 202A92

(Filed 2 July 1993)

1. **Criminal Law § 78 (NCI4th) — pretrial publicity about unrelated murder — denial of venue change**

    The trial court did not err in the denial of defendant's motions for a change of venue of his first-degree murder case based on pretrial publicity surrounding the killing of a deputy sheriff in the same county by another person less than one month before defendant's trial where defendant's evidence showed only that publicity about the deputy's killing and funeral was extensive and that the person charged with the deputy's killing, like defendant, was a black, teenage male; all twelve jurors stated unequivocally that their decision would be unaffected by anything they heard or read; defendant referred to no responses by jurors to voir dire questions that would indicate prejudice against him because of pretrial publicity or community sentiment surrounding the killing of the deputy; and defendant thus failed to meet his burden of proving that there was a reasonable likelihood that due to existing prejudice he would not receive a fair trial in the county.

    **Am Jur 2d, Criminal Law §§ 372 et seq.**

2. **Jury § 220 (NCI4th) — capital case — jury voir dire — appropriateness of death or life sentence — refusal to allow questions — harmless error**

    Assuming *arguendo* that the trial court erred in refusing to allow defendant to question prospective jurors in a first-degree murder trial concerning the circumstances in which the death penalty or life imprisonment would be appropriate, such error was harmless since the jury recommended and defendant received a sentence of life imprisonment.

    **Am Jur 2d, Jury §§ 289, 290.**

3. **Jury § 215 (NCI4th) — belief in death penalty — challenge for cause properly denied**

    The trial court did not abuse its discretion in the denial of defendant's challenges for cause of a prospective juror in a capital case where the juror stated during examination by

the State that she would be able to return a verdict of life imprisonment; the juror then indicated during examination by defendant that the only time the death penalty was not appropriate was when the defendant acted in self-defense; the trial court rejected defendant's first challenge for cause and allowed the State to attempt to rehabilitate the juror; after the State clarified the role of mitigating circumstances, the juror stated that she would be able to consider each mitigating circumstance that she was instructed to consider and assured the court that she would be able to impose a sentence of life imprisonment; and the court thereafter denied defendant's renewed challenge for cause.

**Am Jur 2d, Jury §§ 289, 290.**

4. **Evidence and Witnesses § 1240 (NCI4th)— incriminating statement—no custodial interrogation—Miranda warnings not required**

Defendant's first incriminating statement during an interview by SBI investigators was not the result of custodial interrogation for *Miranda* purposes where the trial court found that defendant was told that he was free to leave on several occasions during the interview, that defendant did not ask to leave or request an attorney at any time, and that defendant was not placed under arrest after making his first statement but was taken home by the SBI investigators. Therefore, this statement was admissible even though defendant was not given the *Miranda* warnings.

**Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.**

**What constitutes "custodial interrogation" within rule of Miranda v. Arizona requiring that suspect be informed of his federal constitutional rights before interrogation. 31 ALR3d 565.**

Appeal of right, pursuant to N.C.G.S. § 7A-27(a), from a judgment imposing a sentence of life imprisonment entered by Ellis, J., on 24 July 1991, in Superior Court, Columbus County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court on 17 March 1993.

## STATE v. LANE

[334 N.C. 148 (1993)]

*Michael F. Easley, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Harry H. Harkins, Jr., for the defendant-appellant.*

MITCHELL, Justice.

The defendant was tried upon proper bills of indictment charging him with first-degree murder and burglary. The jury found the defendant guilty of first-degree murder, based upon the felony murder theory, and of burglary. After a sentencing proceeding, pursuant to N.C.G.S. § 15A-2000 (1988), the jury recommended a sentence of life imprisonment for the murder. The trial court entered judgment accordingly and arrested judgment on the burglary conviction. The defendant appealed to this Court as a matter of right.

The State's evidence tended to show, *inter alia*, the following. On 10 July 1990, several neighbors found Janie B. McBride dead in her Chadbourn home. The medical examiner performed an autopsy and found that McBride had died from two stab wounds to the left side of her chest.

On 27 August 1990, two investigators from the State Bureau of Investigation (SBI) visited the defendant at his residence and asked if he would speak with them about the murder of Janie McBride. The defendant agreed and met the investigators at the Tabor City Police Department shortly thereafter. The investigators questioned the defendant from 8:45 p.m. until 12:25 a.m. The investigators did not advise the defendant of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), but they did tell the defendant several times during the interview that he was free to leave.

The defendant initially denied any involvement with the murder. However, after one and one-half hours of questioning, the defendant told the investigators that he and another man, Terry Campbell, had gone to the victim's house to steal money in order to buy crack cocaine. The defendant said that when he and Campbell broke into the victim's house, she awoke and said, "Who is that?" The defendant stated that Campbell rushed towards the victim and stabbed her several times. According to the defendant, Campbell then stole $40, and the two men fled from the home.

The defendant's description of his involvement in McBride's killing was summarized in a written statement which the defendant

agreed to sign. The statement contained an affirmation of the defendant's understanding that he was not under arrest and was free to leave at any time.

The next day, the SBI investigators learned that Terry Campbell had been in jail at the time of the McBride murder. As a result, the defendant was taken into custody and given the *Miranda* warnings. The defendant waived his rights and agreed to be interviewed a second time. The defendant then confessed to stabbing McBride.

The State introduced other evidence at trial which is discussed at other points in this opinion where pertinent to the issues raised by the defendant. The defendant introduced no evidence.

[1] The defendant first assigns as error the trial court's denials of his initial and renewed motions for change of venue made pursuant to N.C.G.S. § 15A-957. The defendant contends that pretrial publicity surrounding the killing of a Columbus County deputy sheriff less than one month before the defendant's trial was prejudicial. Although the defendant concedes that the publicity dealt with a crime entirely unrelated to the McBride murder and involving a different defendant, he nevertheless contends that he was denied his right to a fair trial by the pretrial publicity due to the similarities between the two defendants. Like the defendant in the present case, the defendant charged with the deputy's killing was a black, teenage male. Both defendants faced a capital trial in Columbus County.

On appeal, the defendant argues that the trial court's rulings deprived him of his constitutional right to a fair and impartial trial. Further, the defendant contends that the extensive pretrial publicity surrounding the deputy's killing and funeral produced a jury predisposed to decide the defendant's case based on something heard or seen outside the courtroom.

The defendant bears the burden of proof in a hearing on a motion for a change of venue due to existing prejudice in the county in which a prosecution is pending. *State v. Madric*, 328 N.C. 223, 226, 400 S.E.2d 31, 33 (1991) (quoting *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987)). In order to prevail, the defendant must establish that there is a reasonable likelihood that due to existing prejudice he will not receive a fair trial. *Madric*, 328 N.C. at 226, 400 S.E.2d at 33 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600 (1966)); *accord State v. Hunt*, 325 N.C.

STATE v. LANE

[334 N.C. 148 (1993)]

187, 381 S.E.2d 453 (1989). The determination of whether the defendant has carried his burden of proof rests initially within the discretion of the trial court. *Madric*, 328 N.C. at 226, 400 S.E.2d at 33. Absent a showing of abuse of discretion, its ruling will not be overturned on appeal. *Id.*

The Record on Appeal shows that the killing of the deputy received extensive publicity in Columbus County. However, the defendant has not established any specific prejudice against him as a result of the publicity. Although the defendant acknowledges with commendable candor that no specific prejudice against this defendant was demonstrated to the trial court, he contends that evidence concerning the pretrial publicity surrounding the unrelated murder of the deputy raised the likelihood that the jury based its decision in this case on information obtained outside the courtroom.

The record shows that of the twelve jurors who decided the present case, five jurors had no previous knowledge of this case. The remaining seven jurors had formed no opinion concerning this defendant from any pretrial publicity. All twelve jurors stated unequivocally that their decision would be unaffected by anything they had read or heard. Further, the defendant does not refer to any responses to *voir dire* questions that would indicate prejudice against him because of pretrial publicity or community sentiment surrounding the killing of the deputy. We conclude that the defendant has not met his burden of proof and that the trial court did not err by denying the motions for change of venue.

[2] The defendant next assigns as error the trial court's refusal to allow the defendant to question prospective jurors concerning circumstances in which the death penalty or life imprisonment would be appropriate. The defendant wished to ask prospective jurors: (1) for examples of cases where they might think the death penalty would be appropriate, (2) whether there was any situation in which they would not be willing to consider life imprisonment, (3) what type of crime justified imposition of the death penalty, and (4) under what circumstances they would consider the death penalty appropriate. The trial court refused to allow the defendant to ask these questions.

The defendant contends that the *voir dire* in the present case was constitutionally insufficient to enable the defendant to ascertain the circumstances wherein the jurors believed life or death

STATE v. LANE

[334 N.C. 148 (1993)]

to be appropriate, or whether they could give proper weight to valid mitigating circumstances. Assuming *arguendo* that the trial court did err in refusing to allow the defendant to ask these questions of potential jurors, any error was harmless since the jury recommended a life sentence and the defendant was sentenced to life imprisonment. Therefore, we find no prejudicial error.

[3] The defendant next assigns as error the trial court's denial of his challenges for cause of prospective juror Melody Spivey. The trial court should excuse for cause any juror who is "unable to render a verdict with respect to the charge in accordance with the law of North Carolina." N.C.G.S. § 15-1212(8) (1988). In *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991), we held that a judge "has broad discretion 'to see that a competent, fair and impartial jury is impaneled and rulings in this regard will not be reversed absent a showing of abuse of discretion.' " *Id.* (quoting *State v. Johnson*, 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979) ).

The trial court in the present case first instructed prospective juror Spivey on the procedures involved in the trial of a capital case. At that time, Spivey stated that she understood the procedures, specifically the capital sentencing procedure. Under further examination by the State, Spivey stated that she would be able to return a verdict of life imprisonment. However, under examination by the defendant, Spivey indicated that the only time the death penalty was not appropriate was when the defendant was acting in self defense.

The trial court then rejected the defendant's first challenge for cause and allowed the State to attempt to rehabilitate Spivey. After the State clarified the role of mitigating circumstances, Spivey stated that she would be able to consider each and every mitigating circumstance that she was instructed to consider. Spivey assured the court that she would be able to impose a sentence of life imprisonment. Thereafter, the court denied the defendant's renewed challenge for cause, and the defendant peremptorily challenged Spivey. From the record before us, we conclude that the defendant has not established any abuse of discretion by the trial court in denying defendant's challenges for cause as to juror Spivey. We find no error.

[4] The defendant next assigns as error the trial court's denial of his motion to suppress his first inculpatory statement to officers.

Specifically, the defendant contends that he was in custody without being advised of his *Miranda* rights during the first interview with the SBI investigators which concluded with his incriminating statement.

In *Miranda*, the Supreme Court of the United States held that "the prosecution may not use statements . . . stemming from *custodial* interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966) (emphasis added). To determine whether a suspect is in custody, a court must apply "an objective test of whether a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way or, to the contrary, would believe that he was free to go at will." *State v. Phipps*, 331 N.C. 427, 442, 418 S.E.2d 178, 185 (1992) (quoting *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982)).

The trial court found that the defendant in the present case was told that he was free to leave on several occasions during the interview on 27 August 1990. The trial court also found that the defendant did not ask to leave and did not request at any time that an attorney be present. Further, the defendant was not placed under arrest after making his first statement, but was taken home by the SBI investigators. Based on these findings of fact, the trial court concluded as a matter of law "that the statement made on 27 August 1990 did not require that *Miranda* warnings be given, that [the defendant] was not in custody and was free to leave and did leave."

The trial court's findings of fact following a *voir dire* hearing are binding on this court when supported by competent evidence. *State v. Mahaley*, 332 N.C. 583, 592, 423 S.E.2d 58, 64 (1992). As we clarified in *Mahaley*, the trial court's conclusions of law based upon those findings are fully reviewable on appeal. *Id.; see also State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988), *vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990); *State v. Perdue*, 320 N.C. 51, 357 S.E.2d 345 (1989). In the present case, the evidence tended to show that the defendant was told several times during the 27 August 1990 interview that he was free to leave and that he was not under arrest. The evidence also showed that the defendant was not arrested on 27 August 1990, but was taken home

by the SBI investigators after the interview. Thus, the trial court's findings were supported by competent evidence. Further, the facts found by the trial court required its conclusion that the defendant did not undergo *custodial* interrogation for *Miranda* purposes on 27 August 1990. Accordingly, we find no error.

For the foregoing reasons, we conclude that the defendant received a fair trial free from prejudicial error.

No error.