STATE OF NORTH CAROLINA v. EDWIN LEE KYLE

No. 146A92

(Filed 4 June 1993)

**1. Kidnapping and Felonious Restraint § 20 (NCI4th) — kidnapping — purpose of facilitating murder, burglary and flight — evidence sufficient**

The trial court did not err by not dismissing a kidnapping charge where the indictment charged that defendant confined, restrained, and removed Valerie Kyle for the purpose of

facilitating the commission of the felonies of murder and burglary and facilitating defendant's flight following the murder and burglary; the evidence showed that defendant broke into and entered the occupied dwelling house of Valerie Kyle in the nighttime without her consent and with the formed intent to commit murder; once defendant entered the apartment, he waved a gun around and backed Valerie Kyle and her son, Saul, up against a side wall in the living room; defendant was standing between Valerie and the door to the apartment; restraining Valerie and Saul in this manner made the burglary easier by enabling defendant to carry out his intent, in that he may not have completed his intent to kill Valerie if he had not restrained her; there was evidence supporting an inference that defendant removed Valerie for the purpose of murder in that defendant dragged Valerie amd Saul from her apartment after shooting her and while she was still living; Saul testified that Valerie called defendant's name as they drove and defendant shot her; and defendant subsequently stopped the car and dragged Valerie's body from the car into a ditch, where he covered the body with leaves.

**Am Jur 2d, Abduction and kidnapping § 32.**

2. **Jury § 140 (NCI4th) — murder — jury selection — questions concerning death penalty and drinking — objections sustained — no prejudice**

There was no prejudice in a prosecution for murder, kidnapping and burglary in sustaining the prosecutor's objections to questions to two prospective jurors regarding the death penalty and drinking where defendant did not receive the death penalty.

**Am Jur 2d, Jury § 202.**

3. **Evidence and Witnesses §§ 339, 672 (NCI4th) — murder — evidence of prior assault on victim — admissible to show identity and malice**

There was no error in a murder prosecution in the admission of evidence of a prior assault on the victim by defendant where, at the time the evidence was offered, defendant had not conceded his guilt of second degree murder. Moreover, defendant did not object to an account of the same incident by a defense witness, elicited upon cross-examination, and this

failure to object is deemed to waive any benefit of the prior objection.

**Am Jur 2d, Evidence § 324; Homicide §§ 310, 312; Trial §§ 173, 174, 176.**

4. **Criminal Law § 775 (NCI4th)— kidnapping and burglary— voluntary intoxication**

There was harmless error in a prosecution for murder, burglary, and kidnapping where the defendant requested that the trial court instruct on the defense of voluntary intoxication, the court agreed, and the court then limited its instruction on voluntary intoxication to the murder charge. Defendant was entitled upon his request to have the trial court instruct the jury on the law regarding voluntary intoxication as it applied to the offenses of burglary and kidnapping; however, the error was harmless because the jury returned a verdict of first-degree murder based on premeditation and deliberation and the felony murder rule after being instructed on voluntary intoxication. The jury's first-degree murder conviction based on premeditation and deliberation indicates that it considered defendant capable of forming specific intent and there is no reasonable possibility that a different result would have been reached had the instruction also been given on the burglary and kidnapping charges.

**Am Jur 2d, Trial § 743.**

**Automatism or unconsciousness as defense to criminal charge. 27 ALR4th 1067.**

5. **Jury § 42 (NCI4th)— jury—motion for special venire—pretrial publicity and racially imbalanced county—denied—no error**

The trial court did not abuse its discretion in a prosecution for murder, kidnapping and burglary by denying defendant's motion for a venire from another county on the grounds of pretrial publicity and that the county was racially unbalanced. The trial court inquired at the beginning of jury selection whether any of the prospective jurors knew of or had heard about the case before coming to court; the court further inquired of prospective jurors as to whether they had formed opinions that would interfere with their ability to give defendant a fair and impartial trial and whether anything they had read or heard would affect their decision in the case; the jurors

were questioned thereafter through the standard selection procedure; the trial court excused seven prospective jurors for cause due to their previously formed opinions as to guilt and their resulting inability to give defendant a fair trial; and the record indicates that all of the jurors selected to hear the case stated unequivocally that they had formed no opinions about the matter and would base their decision solely on the evidence presented.

Am Jur 2d, Jury §§ 153, 159 et seq.

6. **Evidence and Witnesses § 1697 (NCI4th)— murder—autopsy photographs of victim—admissible to illustrate testimony of pathologist**

The trial court did not err in a prosecution for murder, kidnapping, and burglary by admitting eight autopsy photographs of the victim where the photographs were necessary to illustrate the testimony of the pathologist and were not excessive or repetitive.

Am Jur 2d, Homicide § 419.

7. **Kidnapping and Felonious Restraint § 26 (NCI4th)— kidnapping—instructions—refusal to instruct on false imprisonment**

The trial court did not err in a prosecution for kidnapping by denying defendant's request to instruct the jury on the lesser included offense of false imprisonment. There was no evidence presented at trial from which the jury could reasonably have found that defendant was guilty merely of the lesser included offense of false imprisonment.

Am Jur 2d, Abduction and kidnapping §§ 1 et seq.

False imprisonment as included offense within charge of kidnapping. 68 ALR3d 828.

8. **Criminal Law § 1100 (NCI4th)— kidnapping and burglary— sentencing—aggravating factors—use of deadly weapon to support two factors**

The trial court erred when sentencing defendant for kidnapping and burglary by finding as aggravating factors that

STATE v. KYLE

[333 N.C. 687 (1993)]

defendant was armed with a deadly weapon and that he used a deadly weapon to commit the offenses.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence upon defendant's conviction of first-degree murder entered by Freeman, J., at the 22 July 1991 Criminal Session of Superior Court, Ashe County. Defendant's motion to bypass the Court of Appeals, pursuant to N.C.G.S. § 7A-31, as to his burglary and kidnapping convictions was allowed by this Court on 24 August 1992. Heard in the Supreme Court 16 February 1993.

*Michael F. Easley, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On 18 March 1991, defendant was indicted by an Ashe County grand jury for the first-degree murder and first-degree kidnapping of Valerie Ann Goldman Kyle, the first-degree kidnapping of Saul Garcia, and first-degree burglary. Defendant was tried capitally in Superior Court, Ashe County, in July 1991, and the jury returned verdicts of guilty on all charges. Following a sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of life imprisonment for the first-degree murder conviction. In accordance with the jury's recommendation, the trial court sentenced defendant to life imprisonment for the murder, as well as to a consecutive fifty-year sentence for the burglary, and two consecutive forty-year sentences for the kidnapping convictions.

On appeal, defendant brings forward numerous assignments of error. After a thorough review of the transcript of the proceedings, record on appeal, briefs, and oral arguments, we conclude that defendant received a fair trial, free of prejudicial error in the guilt phase. However, for reversible error in the trial court's sentencing proceeding on the burglary and kidnapping convictions, we remand for a new sentencing hearing on the first-degree burglary conviction and on the two first-degree kidnapping convictions.

STATE v. KYLE

[333 N.C. 687 (1993)]

The evidence presented at trial tended to show the following facts and circumstances. Defendant, Edwin Lee Kyle, married the victim, Valerie Kyle, in June of 1990. Defendant lived with the victim and her son, Saul Garcia, in a mobile home until October of 1990, when defendant struck the victim in the back of the head with a pole and threatened to cut her throat with a butcher knife. On 12 October 1990, defendant was convicted of assault with a deadly weapon on the victim. The victim and her son, Saul, moved from the mobile home into an apartment located on Greensboro Manufacturing Road near the intersection of U.S. Highway 221 and N.C. Highway 16.

Early in the morning of 14 November 1990, defendant received a ride from some neighbors to a location on Highway 16 less than a mile from the victim's apartment. Between 4:00 and 5:00 a.m., Saul Garcia was awakened by a loud knocking on the front door and defendant's voice calling his mother's name. The victim told defendant to go away. Defendant then broke the glass part of the front door with his hand and entered the apartment with a gun. The victim tried to stop defendant from entering by pushing the door closed, but defendant pushed her aside. The victim and Saul backed away from defendant as he waved the pistol around. The victim asked defendant for a cigarette, and defendant allowed the victim to get a cigarette from a pack lying near a television. Saul began talking to the victim about the shape of some of the broken glass on the floor, and the victim, who was standing against the side wall in the living room, laughed. Defendant then shot the victim in the chest. Defendant then asked Saul, "You want to be shot, too?" Saul went over to the victim, who had fallen down on the floor.

Defendant dragged the victim out of the apartment and to her red automobile that was parked outside. Defendant placed the victim in the front seat of the vehicle and told Saul to get some water to clear off the windshield. Defendant put the gun in his pocket, ordered Saul to get in the back seat of the car, and drove the three of them toward Virginia on U.S. Highway 221. The victim was still alive and called defendant's name as they drove. Defendant stopped the car 2.6 miles north of the victim's apartment, near the intersection of Shatley Springs Road and U.S. Highway 221, at a sign that said: "New River General Store three miles." This area is located within Ashe County. Defendant said to the victim, "I'll . . . make you shut up." Defendant shot the victim in the

left side of her head behind the ear. Saul knew that the victim was dead because she made no other sounds after that and her eyes rolled to the back of her head. Defendant continued to drive the car toward Virginia and ordered Saul to stop trying to wave at passing cars for help.

Defendant drove the car into Virginia and stopped on a dirt road near Cracker's Neck, at an old mill near a steel bridge over the New River. Defendant dragged the victim's body out of the car into a ditch, placed some leaves over the victim's body, and made Saul do the same. Defendant ordered Saul to get back in the car, and defendant continued driving. Defendant said to Saul, "I'm going to have to shoot you." Defendant stopped the car and ordered Saul to get out. Saul got out of the car and ran. Defendant fired at least one shot at Saul and then returned to the car and drove away. A man driving a truck through the area observed Saul waving his arms near the road and stopped to help him.

Defendant was arrested in Virginia at 11:10 a.m. when he came out of his aunt's home, which was located two to three miles from where the victim's body was found. At the time of his arrest, defendant smelled of alcohol and appeared intoxicated to a degree. Defendant's aunt gave the Virginia police officers permission to search her home, where they discovered a .22-caliber revolver. The bullets removed from the victim's body were fired from this revolver.

Additional facts will be discussed as necessary for the proper disposition of the issues raised by defendant.

[1] Defendant first argues that the trial court erred in failing to dismiss the kidnapping charge with regard to victim Valerie Kyle because the evidence was insufficient to support any theory of kidnapping alleged in the indictment. The indictment charged that defendant confined, restrained, and removed Valerie Kyle "for the purpose of facilitating the commission of the felonies of murder and burglary, and facilitating the flight of Edwin Lee Kyle following his participation in the commission of the felonies of burglary and murder." The trial court instructed the jury in pertinent part as follows:

> So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant removed Valerie Kyle from one place to another and

STATE v. KYLE

[333 N.C. 687 (1993)]

that she did not consent to this removal, and that it was done for the purpose of facilitating the Defendant's commission of a murder or a burglary, and that this removal was a separate, complete act, independent of and apart from the murder or the burglary, and that the person removed was not released by the Defendant in a safe place, it would be your duty to return a verdict of guilty of first degree kidnapping.

Defendant argues that the evidence presented at defendant's trial failed to establish that he restrained or removed the victim either for the purpose of burglarizing her home or for the purpose of murdering her. We disagree.

N.C.G.S. § 14-39 provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]

N.C.G.S. § 14-39 (Supp. 1992). The word facilitate has been defined as "to make easier." *Webster's Ninth New Collegiate Dictionary* 444 (1988). In considering the sufficiency of the evidence to survive a motion to dismiss, "the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and inference to be drawn therefrom." *State v. Covington*, 315 N.C. 352, 361, 338 S.E.2d 310, 316 (1986). We conclude that when so considered, the evidence supports a reasonable inference that defendant confined or restrained the victim for the purpose of facilitating the commission of burglary and murder.

First-degree burglary is the unlawful breaking and entering into an occupied dwelling at night with the intent to commit a felony therein. *State v. Parks*, 324 N.C. 94, 97, 376 S.E.2d 4, 7 (1989). In the instant case, the evidence shows that defendant broke

STATE v. KYLE

[333 N.C. 687 (1993)]

into and entered the occupied dwelling house of Valerie Kyle in the nighttime, without her consent, with the formed intent to commit the felony of murder. Defendant arrived at the apartment with a loaded pistol, and when he was denied entry, he forced his way inside, with the pistol drawn. Defendant argues that the burglary was complete upon entry into the house and that the kidnapping could not facilitate this crime. We disagree. In *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), the defendant argued that the evidence failed to support his kidnapping conviction because the State did not prove the theory charged in the indictment which was asportation of the victim to facilitate the commission of the felony of armed robbery. The defendant in *Hall* contended that since the evidence showed that the crime of armed robbery was complete at the time the victim was taken from the service station to a point on I-95, the kidnapping was for the purpose of facilitating flight, not for the purpose of facilitating armed robbery. This Court held that the defendant kidnapped the victim for the purpose of facilitating the armed robbery. The Court rejected defendant's argument that the crime was complete when Hyman (codefendant) pointed his pistol at the victim and attempted to take property by this display of force. The Court held that "the fact that all the essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." *Id.* at 82-83, 286 S.E.2d at 555-56; *see also State v. Campbell*, 332 N.C. 116, 121, 418 S.E.2d 476, 479 (1992) (when the offenses are so connected as to be part of one continuous transaction).

In the instant case, the evidence shows that, once defendant entered the apartment, he waved the gun around and backed Valerie Kyle and her son, Saul, up against a side wall in the living room. Defendant was standing between the victim and the door to the apartment. Restraining the victim and her son in her apartment in this manner made the crime of burglary easier by enabling defendant to carry out his felonious intent. If defendant had not restrained the victim and had instead allowed her to flee from his presence, he may not have completed his intent to kill her.

A similar analysis applies to the question of whether the evidence was sufficient to establish that defendant confined, restrained, or removed Valerie Kyle for the purpose of facilitating defendant's commission of murder. Defendant argues that because

the State's uncontroverted evidence shows that defendant shot Valerie Kyle shortly after breaking into the apartment, "[t]he murder began and essentially finished before the confinement, restraint, or removal commenced." Defendant contends that no evidence suggested that defendant took the victim from her apartment to the car and drove toward Virginia for the purpose of killing her. Defendant contends that the evidence showed that defendant fired the second shot in the car to quiet the victim. We disagree.

The evidence taken in the light most favorable to the State shows that after shooting Valerie Kyle in her apartment, defendant dragged her and her son to her car while she was still living. The victim's son testified that the victim called defendant's name as they drove. Defendant shot the victim, saying, "I'll . . . make you shut up." Saul testified that he knew the victim was dead because she made no other sounds and her eyes rolled to the back of her head. Once defendant had driven the car into Virginia, the evidence shows that he stopped the car and dragged the victim's body out of the car and into a ditch, where he covered the body with leaves. This evidence supports a reasonable inference that defendant removed the victim from her apartment for the purpose of facilitating the commission of murder. This assignment of error is overruled.

[2] In his next assignment of error, defendant contends that the trial court erred in sustaining the prosecutor's objections to certain of defendant's questions of two prospective jurors, "if [they] were called upon to decide whether to impose the death penalty in this case," regarding their views about alcohol and drinking. Because defendant did not receive the death penalty, he could not have been prejudiced by the court's disallowing these questions. *State v. Bearthes*, 329 N.C. 149, 158-59, 405 S.E.2d 170, 175 (1991). We conclude that the trial judge's ruling in sustaining the objections to defendant's questions of the two prospective jurors in this regard, if error, was harmless beyond a reasonable doubt.

[3] Defendant next assigns as error the trial court's admission of the testimony of Saul Garcia regarding the October 1990 incident during which defendant struck the victim in the back of the head with a pole and threatened to cut her throat with a butcher knife. Defendant argues that this testimony was inadmissible under N.C.G.S. § 8C-1, Rule 404(b) and was more prejudicial than probative under N.C.G.S. § 8C-1, Rule 403.

The rules in regard to the admission of evidence of this type have recently been restated in *State v. Simpson*, 327 N.C. 178, 393 S.E.2d 771 (1990):

> Evidence of another offense is admissible under Rule 404(b) so long as it is relevant to any fact or issue other than the character of the accused. *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990). The evidence of defendant's prior assault on the victim tends to establish malice, an element of first-degree murder, and thus is relevant to an issue other than defendant's character. *State v. Spruill*, 320 N.C. 688, 693, 360 S.E.2d 667, 669 (1987) (evidence of defendant's prior assaults on victim, his former girlfriend, admissible under Rule 404(b) ), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 934 (1988).
>
> Defendant argues that the danger of unfair prejudice substantially outweighed the probative value of the disputed evidence, rendering the evidence inadmissible under Rule 403. "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court. . . . Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *State v. Coffey*, 326 N.C. at 281, 389 S.E.2d at 56.

*Simpson*, 327 N.C. at 185, 393 S.E.2d at 775.

Applying these principles to the case at bar, we conclude that the trial court did not err in admitting Saul Garcia's account of the prior assault on the victim under Rule 404(b), nor did it abuse its discretion under Rule 403. Defendant argues that this case should not be controlled by *Simpson*. Defendant argues that in the instant case, unlike in *Simpson*, defendant did not challenge the prosecution's positive proof of him as the perpetrator or dispute proof of his malice. Defendant argues that he in fact conceded his guilt of second-degree murder during closing arguments. Defendant fails to recognize, however, that at the time such evidence was offered and received, no such concession had been made, and the issue of malice was still hotly contested. In addition, defendant did not object to defense witness Elsie Hamilton's account of the incident, which was elicited during cross-examination. The failure to object to the later admission of similar evidence is deemed to waive any benefit of the prior objection and precludes assigning error on the earlier admission. *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989). This assignment of error is overruled.

**[4]** Defendant next argues that the trial court erred in failing to instruct the jury that it could consider the evidence of voluntary intoxication on the charges of burglary and kidnapping. At the instruction conference, defendant asked the trial court to give Pattern Jury Instruction 305.11 on the effect of voluntary intoxication. The trial judge agreed to do so. Later in the charge conference, the trial judge stated, "I will give the defense intoxication as to first degree murder. That's 305.11." With respect to intoxication, the trial judge charged the jury as follows:

> Now, you may find there is evidence which tends to show that the Defendant was so intoxicated or lacked mental capacity at the time of the acts alleged in this case.

> Generally, voluntary intoxication is not a legal excuse to a crime. However, if you find that the Defendant was intoxicated or lacked mental capacity, you may consider whether this condition effected [sic] his ability to formulate the specific intent which is required for conviction of first degree murder.

> In order for you to find the Defendant guilty of first degree murder, you must find beyond reasonable doubt that he killed the deceased with malice and in the execution of an actual specific intent to kill formed after premeditation and deliberation.

> As a result, if, as a result of intoxication, or lack of mental capacity, the Defendant did not have the specific intent to kill the deceased formed after premeditation and deliberation, he is not guilty of first degree murder, therefore, I charge that if, upon considering the evidence with respect to the Defendant's intoxication or lack of mental condition, you have a reasonable doubt as to whether the Defendant formulated the specific intent required for conviction of first degree murder, then you will not return a verdict of first degree murder.

Defendant argues that the trial court committed reversible error by limiting the intoxication instruction to the murder charge and that the instruction should have been given in regard to burglary and kidnapping as well.

Voluntary drunkenness is not an excuse for a criminal act, but in certain instances, it may be sufficient to negate the requisite intent element of a crime. *State v. Mash*, 323 N.C. 339, 372 S.E.2d 532 (1988). Where a specific intent element is an essential element

of the offense charged, voluntary intoxication may negate the existence of that intent. *State v. Bunn*, 283 N.C. 444, 196 S.E.2d 777 (1973). Voluntary intoxication may be a defense to the crimes of burglary, which requires the intent to commit a felony or felonies, and of kidnapping, which requires that it be committed for a particular purpose or purposes. Here, the State charged in the burglary count that defendant intended specifically to commit the crime of murder, and in the kidnapping counts that defendant confined, restrained, and removed the victim specifically for the purpose of facilitating the commission of the crime of murder and the crime of burglary.

In the instant case, defendant requested that the trial court instruct on the defense of voluntary intoxication, and the court agreed to do so. We conclude that it was error for the trial court to limit the voluntary intoxication instruction only to the murder charge. Defendant was entitled, upon his request, to have the trial court instruct the jury on the law regarding voluntary intoxication as it applied to the offenses of burglary and kidnapping. Nevertheless, we hold that the error here is harmless. Defendant has failed to meet his burden of showing that, "had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (1988). The trial court instructed the jury on voluntary intoxication with regard to the murder charge. The jury returned a verdict of first-degree murder on the bases of premeditation and deliberation and the felony murder rule. By finding defendant guilty of first-degree, premeditated and deliberated murder, the jury failed to find that defendant was intoxicated to a degree sufficient to negate his ability to form the specific intent to kill, thus rejecting defendant's voluntary intoxication defense. The jury's first-degree murder conviction based on premeditation and deliberation indicates that it considered defendant capable of forming specific intent. We do not believe that there is a reasonable possibility that had the voluntary intoxication instruction been given on the burglary and kidnapping charges, in addition to the murder charge, a different result would have been reached at trial.

[5] Defendant next argues that the trial court committed reversible error and abused its discretion by denying defendant's motion for a venire from another county. Prior to the trial, defendant filed a motion pursuant to N.C.G.S. §§ 15A-957(2) and 15A-958 seeking a special venire from another county on the grounds that the county was racially imbalanced and that adverse pretrial publicity

surrounded the case, thereby making it impossible for him to receive a fair and impartial trial. This motion was denied. On appeal, defendant argues that the trial court's ruling on his motion deprived him of his constitutional right to fair trial.

The moving party has the burden of proof in a hearing on a motion for a special venire or a change of venue. *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987). In order for a defendant to succeed on such a motion, defendant must show that, "due to pretrial publicity, there is a reasonable likelihood that the defendant will not receive a fair trial." *State v. Jerrett*, 309 N.C. 239, 254, 307 S.E.2d 339, 347 (1987). It is within the sound discretion of the trial court to determine whether the defendant has carried this burden. *State v. Madric*, 328 N.C. 223, 226-27, 400 S.E.2d 31, 33-34 (1991). On appeal, the trial court's ruling will not be overturned absent a showing of abuse of discretion. *Id.*

At the pretrial hearing on his motion for a special venire from another county, defendant put on evidence of the demographics of Ashe County, local newspaper articles concerning the crimes for which defendant was charged in this case, newspaper circulation figures, and affidavits from several Ashe County residents. The record shows that four articles appeared about the matter in the local newspaper, the *Jefferson Post*. The first account appeared on Friday, 16 November 1990, and the second appeared on Friday, 14 December 1990. These accounts were factual and noninflammatory. The third article ran on Friday, 15 February 1991; in this article, it was reported that the district attorney planned to seek the death penalty for defendant and that a motion to block the imposition of the death penalty had been denied. The final article appeared on Friday, 19 July 1991, before the trial started the following Monday. The article was factual and quoted sources that were a part of the public record. This article contained an account of defendant's prior assault on the victim and the fact that he was convicted in district court. "This Court has consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue." *State v. Gardner*, 311 N.C. 489, 498, 319 S.E.2d 591, 598 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985).

"The best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors' responses to questions during the jury selection

process." *Madric*, 328 N.C. at 228, 400 S.E.2d at 34. "Where . . . a jury has been selected to try the defendant and the defendant has been tried, the defendant must prove the existence of an opinion in the mind of *a juror who heard his case* that will raise a presumption of partiality." *Id.* at 228, 400 S.E.2d at 35. This Court noted in *Madric* that there was no requirement that jurors be totally ignorant of the facts and issues of the case they were to hear and that it is sufficient if the juror can set aside any impression or opinion and render a fair verdict based upon the evidence. *Id.* at 228-29, 400 S.E.2d at 35.

In the case *sub judice*, the trial court inquired at the beginning of jury selection whether any of the prospective jurors knew of or had heard about the case before coming to court. The trial court further inquired of the prospective jurors as to whether they had formed opinions that would interfere with their ability to give defendant a fair and impartial trial and whether anything they had read or heard would affect their decision in the case. The jurors were questioned thereafter through the standard selection procedure. The record shows that the trial court excused seven prospective jurors for cause due to their previously formed opinions as to guilt and their resulting inability to give defendant a fair trial. The record indicates that all of the jurors selected to hear the instant case stated unequivocally that they had formed no opinions about the matter and would base their decision solely on the evidence presented. We conclude, in light of such evidence, that the trial court did not abuse its discretion by denying defendant's motion for a special venire from another county. This assignment of error is overruled.

[6] Defendant next assigns as error the trial court's admission of eight autopsy photographs of the victim into evidence. Defendant contends that the photographs were gory, prejudicial, and irrelevant. Defendant argues that the prejudice that resulted from the admission of the photographs was compounded when one of the photographs was shown to the victim's mother, causing her to cry. Defendant argues that the timing of this crime, the identity of the victim's body, and the manner in which she died were neither disputed nor challenged by defendant. Defendant contends that the admission of these pictures was unnecessary because they did nothing more than rehash uncontroverted, anecdotal testimony by both expert and lay witnesses. Defendant argues, therefore, that the photographs lacked probative value, and the error resulting

from the admission of the photographs requires a new trial. We disagree.

This Court conducted an exhaustive review of the law surrounding the admission of photographic evidence at a murder trial in *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988). We held in *Hennis*:

> Photographs are usually competent to explain or illustrate anything that is competent for a witness to describe in words, and properly authenticated photographs of a homicide victim may be introduced into evidence under the trial court's instructions that their use is to be limited to illustrating the witness's testimony. Thus, photographs of the victim's body may be used to illustrate testimony as to the cause of death. Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by defendant's stipulation as to the cause of death. Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.
>
> . . . .
>
> In general, the exclusion of evidence under the balancing test of Rule 403 of the North Carolina Rules of Evidence is within the trial court's sound discretion. Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each likewise lies within the discretion of the trial court. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*Id.* at 283-84, 285, 372 S.E.2d at 526-27 (citations omitted).

"This Court has rarely held the use of photographic evidence to be unfairly prejudicial, and the case presently before us is distinguishable from the few cases in which we have so held." *State v. Robinson*, 327 N.C. 346, 357, 395 S.E.2d 402, 409 (1990). In the case at bar, the autopsy photographs of the victim were

necessary to illustrate the testimony of the pathologist, Dr. Patrick Lantz, and were not excessive or repetitive. We find no abuse of discretion in the trial court's admitting these photographs. This assignment of error is without merit.

[7] In his next assignment of error, defendant contends that the trial court erred in denying his request to instruct the jury on false imprisonment. False imprisonment is a lesser included offense of kidnapping. *State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514 (1986). Whether the crime committed constitutes kidnapping or the lesser included offense of false imprisonment depends upon the purpose of the confinement, restraint, or removal of another person. If the purpose of the restraint was to accomplish one of the purposes enumerated in the kidnapping statute, N.C.G.S. § 14-39, the offense is kidnapping. *Id.* at 520, 342 S.E.2d at 518; *State v. Pigott*, 331 N.C. 199, 415 S.E.2d 555 (1992).

In *State v. Boykin*, 310 N.C. 118, 310 S.E.2d 315 (1984), we held:

> The law is well settled that the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that defendant committed the lesser included offense. However, when the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged, the trial court is not required to submit and instruct the jury on any lesser included offense. The determining factor is the presence of evidence to support a conviction of the lesser included offense.

*Id.* at 121, 310 S.E.2d at 317 (citations omitted).

In our view, there was no evidence presented at trial from which the jury could reasonably have found that defendant was guilty merely of the lesser included offense of false imprisonment with regard to either Valerie Kyle or Saul Garcia.

With regard to the victim Valerie Kyle, the indictment charged that defendant confined, restrained, and removed her "for the purpose of facilitating the commission of the felonies of murder and burglary, and facilitating the flight of Edwin Lee Kyle following his participation in the commission of the felonies of burglary and murder." Defendant forcibly broke into and entered the victim's occupied apartment with a loaded pistol. Once inside, defendant

restrained the victim and her son. Defendant shot the victim while inside the apartment and then removed her and her son to her car. Defendant shot and killed the victim while driving toward Virginia. We conclude that there was no evidence upon which the jury could have concluded that defendant, although confining or restraining or removing the victim, did so for some purpose other than to facilitate defendant's commission of murder or burglary. Therefore, defendant was not entitled to an instruction on the lesser included offense of false imprisonment with regard to Valerie Kyle.

With regard to Saul Garcia, the indictment charged and the State sought to show that the kidnapping was for the purpose of facilitating defendant's commission of or flight after committing a murder or a burglary. As we noted above, defendant forcibly broke into and entered Valerie Kyle's occupied apartment with a loaded pistol, and once inside, defendant restrained Kyle and her son. Defendant shot Kyle while inside the apartment and then removed her and her son to her car. Defendant shot and killed Kyle while driving toward Virginia. When they arrived in Virginia, defendant dragged Kyle's body out of the car and into a ditch. Defendant forced Saul to place leaves over his mother's body and then ordered Saul to get back into the car and continued driving. Defendant said to Saul, "I'm going to have to shoot you." Defendant stopped the car and ordered Saul to get out. Saul got out of the car and ran. Defendant fired at least one shot at Saul and then returned to the car and drove away. This evidence shows that the kidnapping was for the purpose of facilitating flight into another jurisdiction following the commission of the felonies of burglary and murder. We conclude that there was no evidence from which the jury could have found defendant guilty of the lesser included offense of false imprisonment. The trial court did not err in denying defendant's requests for jury instructions on the lesser included offense of false imprisonment. This assignment of error is overruled.

[8] In his final assignment of error, defendant contends that the trial court committed reversible error in finding as aggravating factors both that defendant was armed with a deadly weapon and that he used a deadly weapon to commit the offenses of kidnapping and burglary. We agree.

Upon defendant's convictions of one count of first-degree burglary and two counts of first-degree kidnapping, the trial court

considered the evidence and made findings in aggravation and mitigation. The trial court found, as aggravating factors in each of these crimes, that defendant was armed with a deadly weapon at the time of the crime and that defendant used a deadly weapon at the time of the crime. The court imposed maximum sentences for the kidnapping and burglary convictions. Defendant contends that these two aggravating factors were supported by the same evidence in the instant case. We agree.

"[T]he same item of evidence may not be used to prove more than one factor in aggravation." N.C.G.S. § 15A-1340.4(a) (Supp. 1992). N.C.G.S. § 15A-1340.4(a)(1)(i) provides for the following aggravating factor: "The defendant was armed with *or* used a deadly weapon at the time of the crime." (Emphasis added); *see State v. Rios*, 322 N.C. 596, 599, 369 S.E.2d 576, 578 (1988) ("The sentencing judge may find as a factor in aggravation that '[t]he defendant was armed with or used a deadly weapon at the time of the crime.' N.C.G.S. § 15A-1340.4(a)(1)(i) (1983). As the statute makes clear this aggravating factor can be found if a defendant either uses a deadly weapon *or* is merely armed with one at the time of the crime.").

In the instant case, the evidence shows that defendant used a gun while he committed burglary and kidnapping. As we recognized in *Rios*, this statute was intended to encompass· two kinds of conduct: (1) the actual use of a deadly weapon in the commission of a crime, and (2) merely having a weapon in one's possession at the time of the crime. The fact that both of these factors in aggravation are listed on the appropriate sentencing form merely affords a sentencing court with a mechanism for aggravating a crime where a defendant merely arms himself with a deadly weapon at the time of the crime but does not actually use it in the commission of the offense. In this case, the evidence shows that defendant used a deadly weapon in the commission of the crimes of burglary and kidnapping. Defendant could not use a deadly weapon in the commission of the offenses without also being armed with a deadly weapon at the time of the crimes. We conclude that the trial court improperly found these two factors in aggravation based upon the same evidence. We therefore conclude that defendant is entitled to a new sentencing hearing on his convictions for burglary and kidnapping. *State v. Ahearn*, 307 N.C. 584, 300 S.E.2d 689 (1983).

For the reasons stated above, we find no reversible error in the guilt phase of defendant's trial or in the sentencing phase

as to the murder conviction. However, for reversible error in the sentencing proceeding, we vacate the sentences imposed for the burglary and kidnapping convictions and remand the case to the Superior Court, Ashe County, for resentencing on defendant's convictions for one count of first-degree burglary and two counts of first-degree kidnapping.

90CRS1857, FIRST-DEGREE MURDER: NO ERROR;

90CRS1857, FIRST-DEGREE BURGLARY: NO ERROR IN GUILT PHASE; SENTENCE VACATED AND REMANDED FOR RESENTENCING;

90CRS1857, FIRST-DEGREE KIDNAPPING OF VALERIE KYLE: NO ERROR IN GUILT PHASE; SENTENCE VACATED AND REMANDED FOR RESENTENCING;

90CRS1858, FIRST-DEGREE KIDNAPPING OF SAUL GARCIA: NO ERROR IN GUILT PHASE; SENTENCE VACATED AND REMANDED FOR RESENTENCING.