An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-459

Filed 4 February 2026

Rutherford County, Nos. 20CR000106-800, 20CR000109-800, 21CR000799-800

STATE OF NORTH CAROLINA

v.

BRUCE RAY CHANDLER

Appeal by defendant from judgment entered 31 March 2023 by Judge J. Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 14 January 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Justin Isaac Eason, for the State.*

*Mark Montgomery, for defendant.*

ARROWOOD, Judge.

Bruce Ray Chandler ("defendant") appeals from judgment entered after jury trial where he was convicted of statutory sexual offense and taking indecent liberties with children. Defendant argues that the trial court reversibly erred by making an inadequate inquiry after defense moved to excuse a juror for incapacity because she cried after the court published one of the State's exhibits to the jury. Finding no

error, we affirm the trial court's judgment.

I.    Background

This case arises from incidents discussed in testimony by minor sisters Kay and Lynn.[1] Kay and Lynn previously lived in a crowded trailer with defendant, then the boyfriend of their grandmother. Kay, age 13 at the time of trial, testified that in 2019 when she was 8 years old, she and Lynn played "Truth or Dare" with defendant and their male cousin Jarrin. Kay testified that Jarrin left the girls alone with defendant, who locked the door, turned off the lights, dared the girls to masturbate him, and refused to let them leave. Kay testified that for about twenty minutes defendant restrained and stripped the girls, attempted to vaginally rape them, and took photographs of his acts, while wearing an orange shirt. Kay testified that defendant assaulted the girls on another occasion, attempting to rape Kay anally for approximately ten to fifteen minutes, and restraining Lynn while taking photographs.

Kay authenticated the State's Exhibit 1, a picture of herself and defendant taken in defendant's room. Lynn, age 14 at the time of trial, testified and corroborated Kay's testimony in detail. Lynn also authenticated the State's Exhibit 2, a photograph showing herself and defendant's penis, and identified herself and defendant in State's photographic Exhibits 3-7. Jarrin corroborated this testimony

---

[1] Pseudonyms are used throughout the opinion to protect the identity of the juveniles.

as well, testifying to his memory that defendant locked him out of the room, and that when Kay and Lynn came out, they cried and told him defendant had touched them inappropriately.

The jury heard further testimony from Ashley Collins from Rutherford County's Department of Social Services, who responded in March 2019 to reports of abuse and neglect for Kay and Lynn and determined that they should be removed to temporary care. The jury also heard from Vanessa Parton from Rutherford County Family Resources, who conducted forensic interviews with Kay and Lynn which were consistent with their later testimony. Detective Julie Green from the Rutherford County Sheriff's Office testified that she obtained defendant's cell phone through a search warrant and located explicit pictures of defendant, in an orange and red shirt, and pre-pubescent girls' genitals, all taken close in time to one another. She authenticated the photos, including the pictures in which Kay and Lynn had identified themselves.

During Detective Green's testimony, the trial court published several of these photographs to the jury, then ordered a brief recess. Out of the jury's hearing, defense counsel asked the court to question Juror 4, having seen her "get emotional multiple times throughout the trial as evidence has been published to her," raising his concerns about her neutrality. The court immediately agreed to discuss this concern with Juror 4. The court stated, "For the record, it appeared to me that . . . after she got through [with the photos], she just broke down and started crying and for that

reason . . . I took the break. . . . The question is whether she can still focus on this case, listen to the evidence and still remain fair and impartial."

Juror 4 then entered separately to answer a series of questions from the court about her mental state and capacity. The court told Juror 4 that she had been observed becoming emotional and that there could be more similar evidence forthcoming, which Juror 4 said she understood. Asked whether she could handle similar evidence during the rest of the trial, Juror 4 responded affirmatively. The court asked Juror 4, "Do you think you can still remain fair and impartial and assess the credibility of the witnesses fairly and deliberate with your fellow jurors in coming up with the facts from the evidence and then applying those facts to the law?" Juror 4 said yes.

Nevertheless, defense counsel asked the court to remove Juror 4: "It looks to me that her objectivity appears to be compromised and she would have difficulty being a fair and impartial juror." The court stated the Juror 4 had become emotional due to the "nature and graphicness of those photographs" and that "this is not a case where you can hide your emotions easily." The court discussed its questions to Juror 4: "She has come in here now and also seems to be composed and says she can handle it. She can still be fair. She can consider the evidence fairly and deliberate with her fellow jurors to conclude this matter." The State then asserted that defense counsel was able to ask in voir dire about prospective jurors' capacity to view this type of

evidence, and defense counsel agreed that he had done so. Denying defense counsel's request, the court ruled:

> Based on the record . . . as well as the Court's observation of this particular juror, the Court at this point finds that she's still able to remain fair and impartial, as she has indicated, in this case and has not been overly affected to the extent that she can't proceed or can't maintain the requirements as a juror in this case, so as a result of that, the Court is going to overrule the objection or any request from the defendant to remove her from the jury at this time. Of course, if anything continues or gets worse . . . the Court would assess the situation . . . to make a new assessment regarding the juror.

At the close of the trial, the jury found the defendant guilty as charged. Defendant gave written notice of appeal on 3 April 2023.

## II.     Analysis

As a long-established matter of Constitutional law, all twelve jurors who render a unanimous verdict convicting a criminal defendant must be impartial and qualified to serve. *State v. Poindexter*, 353 N.C. 440, 443–44 (2001). Pursuant to North Carolina statutory law, any party may challenge an individual juror for cause on the ground that the juror is not qualified, incapable by reason of mental or physical infirmity, presently charged with a felony, related to the defendant or victim, involved in other proceedings related to the charge or defendant, or where the juror has "formed or expressed an opinion as to the guilt or innocence of the defendant" or "[a]s a matter of conscience . . . would be unable to render a verdict with respect to the charge in accordance with the law." N.C.G.S. § 15A-1212 (2023).

- 5 -

The statutes of North Carolina establish the role of the judge where a trial juror's competency is disputed. "The trial judge must decide all challenges to the panel and all questions concerning the competency of jurors." N.C.G.S. § 15A-1211. "The decision whether to reopen examination of a juror previously accepted by both the State and defendant . . . is a matter within the sound discretion of the trial judge." *State v. Freeman*, 314 N.C. 432, 437 (1985) (citation and quotation marks omitted). The judge retains discretion to decide questions of competency up until the final submission of the case to the jury, including whether to excuse a juror and substitute an alternate. *State v. Nelson*, 298 N.C. 573, 593 (1979). The test is whether the challenged juror is "unable to render a fair and impartial verdict." N.C.G.S. § 15A-1212(9).

We review a trial court's pre-submission determinations on juror competency for abuse of discretion. *Nelson*, 298 N.C. at 593. This Court does not disturb such decisions "absent a showing that the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *State v. Richardson*, 341 N.C. 658, 673 (1995).

On appeal, defendant argues that his convictions should be set aside because the trial court's inquiry into Juror 4's competence was inadequate, and without an adequate inquiry, it was structural error to overrule the defense's challenge and allow her to remain on the jury. Defendant asserts that the court's inquiry was "reduced" to "whether the juror could say she would follow the law, remain impartial, [and]

consider the evidence" and deems this "a shallow dive into the juror's state of mind and reaction to the evidence [which] was insufficient to determine if she was and could remain impartial." (cleaned up).

Challenges to juror competency are the frequent subject of criminal appeals, generally concerning challenges to prospective jurors during *voir dire*. Our courts have repeatedly and consistently affirmed that the manner and mode of inquiry into a challenged prospective juror's ability to remain impartial is reserved for the trial court's discretion: "Counsel's exercise of the right to inquire into the fitness of jurors is subject to the trial judge's close supervision. The regulation of the manner and the extent of the inquiry rests largely in the trial judge's discretion." *State v. Bryant,* 282 N.C. 92, 96 (1972). "The trial court has broad discretion to ensure that a competent, fair, and impartial jury is impaneled." *State v. Soyars,* 332 N.C. 47, 56 (1992). "The trial court is given broad discretion to control the extent and manner of questioning prospective jurors." *State v. Mash*, 328 N.C. 61, 63 (1991).

As to the scope of this questioning, a court's inquiries into whether a juror was unable to be fair, consider the evidence, and follow the law "were sufficient to uncover any bias that a prospective juror might have had and to ensure the defendant a fair and impartial jury." *Id.* at 64. "Where the trial court can reasonably conclude from the *voir dire* examination that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory." *State v.*

*Green,* 336 N.C. 142, 167, *cert. denied,* 513 U.S. 1046 (1994).

Our Courts have long recognized that this discretion survives the preliminary *voir dire* procedure. In *State v. Kirkman,* 293 N.C. 447 (1977), where a juror raised a new concern about her own impartiality after she had been impaneled, the trial court properly exercised its discretion in examining the challenged juror, because our Supreme Court could "perceive no reason for the termination of this discretion in the trial judge at the impanelment of the jury." *Kirkman,* 293 N.C. at 454.

So too here. As a statutory matter, all prospective jurors must meet the same standards of competence, fairness, and impartiality to be properly impaneled. Likewise, jurors must meet these same standards to remain properly seated, and it is the judge's role to ensure that no juror falls short until the verdict is reached.

Furthermore, we have ample reason to reserve such decisions to the discretion of the trial court:

> The trial court has the opportunity to see and hear the juror on *voir dire* and, having observed the juror's demeanor and made findings as to his credibility, to determine whether the juror can be fair and impartial. For this reason, among others, it is within the trial court's discretion, based on its observation and sound judgment, to determine whether a juror can be fair and impartial.

*State v. Yelverton,* 334 N.C. 532, 543 (1993) (citation omitted). Therefore, where the judge's on-the-record inquiry into the competence of a challenged already-impaneled juror assures the trial court that the juror can remain fair, consider the evidence, and follow the law, no due process concerns arise from the court's decision not to excuse

that juror.

In the instant case, the trial court's decision not to excuse Juror 4 for cause was not "so arbitrary that it could not have been the result of a reasoned decision." Instead, before the inquiry, the trial court stated for the record that it recognized that Juror 4 had become emotional and properly set out the correct question the court had to determine: "[W]hether she can still focus on this case, listen to the evidence and still remain fair and impartial."

The record preserves the full inquiry. Judge Davis asked Juror 4 if she was okay. Judge Davis asked Juror 4 if she could focus on the testimony and evidence, even if there is "more of the same." Judge Davis asked Juror 4 if she could remain fair and impartial and continue to assess witness credibility. Judge Davis asked Juror 4 if she could deliberate with fellow jurors to determine the facts and apply them to the law. And finally, Judge Davis asked Juror 4 if she had anything additional to add. In response to each of these questions, Juror 4 expressed that she was willing and able to proceed. Judge Davis stated for the record that he had observed that Juror 4 "seems to be composed." Overruling the defense's challenge, Judge Davis found that Juror 4 could remain fair and impartial, leaving open the possibility for a new assessment should a further challenge arise.

This Court looks to the record recognizing that the trial court had the superior vantage point to watch Juror 4 before and during its inquiry. However, the record provides no indication whatsoever that that the trial court's decision was "so

arbitrary that it could not have been the result of a reasoned decision." *Richardson*, 341 N.C. at 673. To the contrary. Judge Davis took "the opportunity to see and hear the juror . . . [and] observed the juror's demeanor and made findings as to [her] credibility." *Yelverton*, 334 N.C. at 543. He stated the correct standard governing the court's inquiry. Within his discretion, Judge Davis chose the questions he deemed sufficient to complement his observations and assist his decision-making, and then stated the reasoning for his conclusion: Juror 4 became temporarily emotional while viewing the State's evidence, which was foreseeable in a case about child sexual abuse because "this is not a case [where] you can hide your emotions easily," but thereafter returned to composure and reaffirmed her ability to remain fair and impartial. Because nothing in the record would have made this decision unreasonable, defendant's argument necessarily fails.

A court's contrary decision in a similar situation is illustrative here. In *State v. McLaughlin*, which defendant relies upon, our Supreme Court approved a juror's removal for cause when she became "distraught and highly emotional." *State v. McLaughlin*, 323 N.C. 68, 101 (1988). There, the juror "was crying uncontrollably," "could speak only with difficulty," and "told the trial court that she felt incapable of remaining on the jury." *Id.* at 100. Therefore, the Court did not find any abuse of discretion because "the record so clearly demonstrates that an immediate replacement was necessary." *Id.* at 101. Juror 4, on the other hand, recovered her composure as the court took a brief recess and repeatedly told the court during the

inquiry that she would be able to proceed. Despite the plain differences between Juror 4 and the *McLaughlin* juror, defendant implausibly argues for the same result here.

Defendant also lists questions the trial court was supposedly required to answer: "The court never asked Juror 4 why she became upset . . . Nor did the court ask what if anything about the evidence was upsetting to her or why. The court never inquired if it was the photographs or something else." Judge Davis wisely avoided such questions, stating for the record that he "didn't ask her what the reason for her crying was." Defendant fails to explain why these questions would be anything other than an inappropriate incursion into a juror's mental state as she considers a party's evidence. To accept defendant's argument would be to permit judges to question a seated juror in the presence of the parties midtrial about her individual personal reactions to any evidence or testimony, the reasons for those reactions, or her present thoughts about the contents of evidence.

The competent and impartial jury enriches their service to our judicial system with their personal experiences, perspectives, and feelings. This is the "community participation in the administration of the criminal law" which "is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system." *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). The trial court's decision in the instant case upheld the integrity of the trial by jury, and we will not disturb its judgment.

III.    Conclusion

For the above reasons, we find that the trial court committed no error in its questioning of Juror 4 or in overruling the defense's challenge to her impartiality. Therefore, we affirm the trial court's judgment.

NO ERROR.

Judges GRIFFIN and STADING concur.

Report per Rule 30(e).